IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES M. STEELE, | ) | CASE NO. 1:15CV1374 |
| | ) | |
| Petitioner, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| CHARLOTTE JENKINS, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Charles M. Steele ("Petitioner" or "Steele") brings this habeas corpus action pursuant to 28 U.S.C. § 2254. Doc. 1. Steele is detained at the Chillicothe Correctional Institution, having been found guilty by a Cuyahoga County, Ohio, Court of Common Pleas jury of four counts of rape and four counts of kidnapping, all with firearm specifications. Doc. 11-1, p. 312.[1] *State v. Steele*, Case No. CR-13-575214-A (Cuyahoga Cty. Common Pleas Ct., filed February 24, 2014). Prior to sentencing, the trial court merged one rape and one kidnapping count and sentenced Steele to eight to 25 years in prison for each rape and kidnapping count, and three years for three firearm specifications on three rape counts, the terms to be served consecutively, for an aggregate prison sentence of 65 to 184 years. Doc. 11-1, p. 60.

On July 9, 2015, Steele filed his Petition for Writ of Habeas Corpus setting forth five grounds for relief. Doc. 1, pp. 7-12. This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2. As set forth more fully below, Steele's Grounds are procedurally defaulted; additionally, they are not cognizable and they fail to state a claim or fail on the merits. Thus, the undersigned recommends that Steele's Petition for Writ of Habeas Corpus (Doc. 1) be **DISMISSED**.

---

[1] Doc. page citations are to ECF Doc. page numbers.

1

# I. Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008).

## A. State Court Action

### 1. Underlying Facts

The following summary of underlying facts is taken from the opinion of the Cuyahoga County Court of Appeals, Eighth Appellate District of Ohio:[2]

> {¶ 2} During a one-year period between March 5, 1993 and March 6, 1994, Steele attacked and raped four women on Cleveland's east side. Steele perpetrated each attack in a similar manner. At the time of each attack, the woman was walking alone when Steele approached, threatened her life, and removed her to a different location where he vaginally raped each woman. The women reported the attacks and underwent rape-kit examinations where DNA was collected. The Ohio Bureau of Criminal Identification and Investigation tested each kit and determined that the DNA profiles were consistent with Steele. In particular, a DNA analyst testified that Steele could not be excluded as a source of the semen on the vaginal swabs and that "the expected frequency of occurrence of the DNA profile from the sperm fraction of the vaginal swabs * * * is 1 in 1,039,000,000,000,000,000 unrelated individuals."

Doc. 11-1, p. 202; *State v. Steele*, 2014 WL 6983321, at *1 (Oh. Ct. App. Dec. 11, 2014).

### 2. Procedural History

On March 6, 2013, a Cuyahoga County Grand Jury indicted Steele on one count of rape, Ohio Revised Code §2907.02(A)(2), and one count of kidnapping, R.C. §2905.01(A)(4), each

---

[2] Steele has not demonstrated by clear and convincing evidence that the state court's findings were incorrect. Accordingly, the state court's findings are presumed correct. *See* 28 U.S.C. § 2254(e)(1); *see also Railey*, 540 F. 3d at 397.

with one- and three-year firearm specifications.[3] Doc. 11-1, pp. 5-6. Steele, through appointed counsel, pleaded not guilty. Doc. 11-1, p. 7.

Steele, *pro se*, filed a motion to dismiss the indictment pursuant to R.C § 2901.13, arguing that the statute of limitations to prosecute had passed. Doc. 11-1, pp. 8-9. Steele, through counsel, filed a second motion to dismiss the indictment as beyond the twenty-year statute of limitations. Doc. 11-1, pp. 14-15.

On July 11, 2013, a Cuyahoga County Grand Jury indicted Steele on four counts of rape, R.C. § 2907.02(A)(2), and four counts of kidnapping, R.C. § 2905.01(A)(4), with firearm specifications; these counts included the rape and kidnapping counts charged in the prior indictment.[4] Doc. 11-1, pp. 44-48. Steele, through counsel, pleaded not guilty. Doc. 11-1, p. 49. On January 21, 2014, the trial court dismissed the first case against Steele without prejudice because Steele was re-indicted in the second case. Doc. 11-1, p. 43.

On January 22, 2014, Steele filed a waiver of his right to counsel and an expression of intent to proceed *pro se*. Doc. 11-1, p. 50. Following a hearing, the trial court permitted Steele to proceed *pro se* with his appointed counsel to remain as advisory counsel. Doc. 11-1, p. 56. The case proceeded to trial and the jury found Steele guilty on all counts. Doc. 11-1, p. 56.

On February 24, 2014, the trial court merged one rape and one kidnapping count and sentenced Steele to eight to 25 years in prison for each rape and kidnapping count, and three years for three firearm specifications on three rape counts, the terms to be served consecutively, for an aggregate prison sentence of 65 to 175 years. Doc. 11-1, p. 58. On February 28, 2014, the

---

[3] Respondent explains, "The indictment arose from the DNA testing of backlogged untested rape kits." Doc. 11, p. 4. At the time Steele was indicted, he was incarcerated after being convicted of rape in Hamilton County. Doc. 11, p. 3.

[4] Respondent adds, "ongoing DNA testing of untested rape kits resulted in three additional hits on Steele leading to additional indictments." Doc. 11, p. 4.

3

court entered a *nunc pro tunc* entry correcting its entry and sentencing Steele to an aggregate prison sentence of 65 years to 184 years. Doc. 11-1, p. 60.

### B. Direct Appeal

On March 21, 2014, Steele, *pro se*, filed two notices of appeals with the Ohio Court of Appeals. The first appealed the trial court entry dismissing his first case without prejudice due to re-indictment in his second case. Doc. 11-1, p. 62. The second appealed his conviction. Doc. 11-1, p. 68. On April 4, 2014, Steele filed a motion to consolidate his appeals. Doc. 11-1, p. 75. The Ohio Court of Appeals granted Steele's motion and consolidated his appeals. Doc. 11-1, p. 77. Steele raised the following assignments of error:

> 1. The Prosecuting Attorney for Cuyahoga County Perpetrated Fraud Upon The Court When They Initiated A prosecution against Defendant Steele, Where the prosecutor's office had to have known that the Statu[t]e of Limitations for prosecution of the crime charged had expired fourteen (14) years prior to the filing of the indictment violating defendant's right to Due Process and Equal Protection as guaranteed by the United States Constitution.
>
> 2. Appellant was denied Due Process When the Court refused to Discharge Him Pursuant to Ohio Revised Code 2941.71 as the State did not bring him to trial within the Statutory Speedy Trial Period.
>
> 3. Trial Counsel is ineffective when he allows the client to face multiple charges/counts to an indictment that were highly prejudicial cumulative and would have offered the client no chance of a fair trial because counsel failed to request severance of the charges/counts.
>
> 4. The Trial Court committed highly prejudicial [] error when allowing Prosecution to Amend the Elements of the charges in Count Three of the Indictment of the defendant, the Court is the authority on the issue and if the Court agrees to the amendment that prejudices the defendant the Court commits Plain Error.
>
> 5. Appellant was denied his Constitutional Rights Guaranteed by the Sixth Amendment to the United States Constitution, when the Trial Court allowed the State to Deny Appellant his rights to Confront the Witness Against Him, and to have the Compulsory Process where the State knew that One of the alleged Victims had died prior to trial.
>
> 6. Defendant was denied the assistance of Counsel as guaranteed by the Ohio and United States Constitutions, When both did everything within their powers to

4

assist the State in gaining convictions against the defendant.

Doc. 11-1, pp. 79-83. On December 11, 2014, the Ohio Court of Appeals affirmed the trial court's conviction but, *sua sponte*, vacated the indefinite sentence and remanded the case to the trial court to re-sentence Steele to a definite sentence. Doc. 11-1, pp. 200-218.

### C. Ohio Supreme Court

On December 23, 2014, the State of Ohio filed a notice of appeal with the Ohio Supreme Court, raising the following proposition of law:

> A defendant who commits an offense prior to July 1, 1996 is subject to law in effect at the time of the offense and not subject to sentencing provisions of S.B. 2 effective July 1, 1996 and H.B. 86 effective September 30, 2011.

Doc. 11-1, p. 220, 226-227. The state also filed a motion to stay the Ohio Court of Appeals' judgment, which the Ohio Supreme Court denied. Doc. 11-1, p. 225. On April 29, 2015, the Ohio Supreme Court declined to accept jurisdiction of the state's appeal. Doc. 11-1, p. 262. The state filed a motion for reconsideration, which the Ohio Supreme Court denied on July 8, 2015. Doc. 11-1, pp. 263, 269.

Also on December 23, 2014, Steele, *pro se*, filed a notice of appeal with the Ohio Supreme Court. Doc. 11-1, p. 270. In his memorandum in support of jurisdiction, Steele raised the following propositions of law:

> 1. Is A Defendant Afforded A Fair Trial When He Is Denied The Trial Transcripts Of The Case and Had Advised The Appellate Court That He Did Not Have The Use Of The Transcripts By Way Of Judicial Notice.
>
> 2. May Any Court Address The Issue Of Fraud Upon The Court When That Issue Has Been Brought To The Attention Of The Court.

Doc. 11-1, p. 285. On April 29, 2015, the Ohio Supreme Court declined to accept jurisdiction. Doc. 11-1, p. 311.

### D. Resentencing

5

On January 28, 2015, the trial court held a re-sentencing hearing and, pursuant to the Ohio Court of Appeals' order on remand, imposed a definite aggregate sentence of 72 years in prison.

On March 3, 2015, Steele, *pro se*, filed a notice of appeal with the Ohio Court of Appeals. Doc. 11-1, p. 314. On April 21, 2015, the state Court of Appeals dismissed the appeal because Steele failed to file the record in his case. Doc. 11-1, p. 321.

### E. Federal Habeas Petition

On July 9, 2015, Steele, *pro se*, filed his Petition for a Writ of Habeas Corpus. Doc. 1. He listed the following grounds for relief:

> **Ground One**: Deprived the right to a reliable jury. The determination of the jury was steered, and not beyond reasonable doubt. The jury clearly lost its way.
>
> **Ground Two**: Actual innocent of the indicted charge. The facts show a clear claim of innocence of the indicted charge.
>
> **Ground Three**: Sentence is contrary to law and constitution. The sentence does not constitutionally meet the facts.
>
> **Ground Four**: Insufficient evidence which cause miscarriage of justice. The evidence is insufficient to render guilty, when in all actuality renders a favorable showing of innocence of the indicted charge.
>
> **Ground Five**: Fraud upon the court, "withholding of data, and records of the trial."

Doc. 1, pp. 7-12.[5] On September 18, 2015, Respondent filed a Return of Writ (Doc. 11) and Steele filed a Traverse (Doc. 16). Respondent argues that all Steele's grounds are procedurally defaulted and also are not cognizable, fail to state a claim, or fail on the merits. Doc. 11, pp. 8-21.

## II. Law

---

[5] Steele's fifth ground for relief is not clearly set forth in his Petition. Respondent has characterized Ground Five as above. In his Traverse, Steele does not object to Respondent's characterization of Ground Five and the Court agrees that Ground Five is best characterized as above. *See* Doc. 1, p. 12 ("The Petitioner in this Action asserts that fraud on the court in the withholding of data, and records of the trial.").

6

### A. Standard of Review under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), apply to Steele's habeas petition because he filed it after the effective date of AEDPA. 28 U.S.C. § 2254; *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007). Under AEDPA, a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). In contrast, when state court remedies are no longer available, procedural default rather than exhaustion applies. *Williams*, 460 F.3d at 806.

**Exhaustion.** A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts"). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation

7

requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 19*90). In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 20*00). This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law. *See, e.g.*, *Franklin v. Rose,* 811 F.2d 322, 325 (6th Cir. 19*87); *Prather v. Rees,* 822 F.2d 1418, 1421 (6th Cir. 1*987).

**Procedural Default.** Procedural default may occur in two ways. *Williams,* 460 F.3d at 806. First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id*. In *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 19*86), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *See also Williams,* 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin,* 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'"

8

*Williams,* 460 F.3d at 806 (citing *O'Sullivan,* 526 U.S. at 848). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*. While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review. *Williams,* 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman,* 501 U.S. at 750.

**Merits Review**. In order to obtain habeas relief under 28 U.S.C. § 2254(d), a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involving an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause). *Id*.

"Under the 'contrary to' clause, a federal habeas court may grant a writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412-413 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id. at 413*. "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, as well as legal principals

9

and standards flowing from Supreme Court precedent. *Id.* at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

In determining whether the state court's decision involved an unreasonable application of law, the court employs an objective standard. *Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

### III. Claim Analysis

Steele sets forth five grounds for relief in his Petition. Doc. 1, pp. 7-12. Respondent argues that all Steele's grounds are procedurally defaulted and that, additionally, they are not cognizable, fail to state a claim, or fail on the merits. Doc. 11, pp. 8-21.

**A. All Steele's grounds are procedurally defaulted**

All Steele's grounds are procedurally defaulted. To recap: Steele's six grounds for relief presented on direct appeal to the Ohio Court of Appeals were as follows: (1) the statute of

10

limitations had run for counts one and two; (2) his speedy trial rights were violated; (3) trial counsel was ineffective for failing to request severance of the counts and, as a result, Steele faced multiple charges that were highly prejudicial cumulatively; (4) the trial court erred when it permitted the state to amend the indictment; (5) his right to confront witnesses was violated when a deceased victim's medical records were introduced; and (6) trial counsel was ineffective because counsel assisted the state in convicting Steele. *Steele*, 2014 WL 6983321, at * 2-6; Doc. 11-1, pp. 86-114.

Steele never presented Grounds One through Four of his Petition to the state courts. All these grounds could have and should have been raised on direct appeal because they can be adjudicated based on facts in the trial court record.[6] *Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001) (citing *State v. Lentz*, 639 N.E.2d 784, 785 (1994)). Because they should have been raised on direct appeal, Steele may no longer raise these claims in state court. *Id*. Steele's failure to present any of these grounds to the Ohio courts results in procedural default of these grounds. *See Williams*, 460 F.3d at 806 (a claim is procedurally defaulted when a petitioner failed to raise it in state court and pursue it through the state's ordinary appellate review procedures and state law no longer permits the petitioner to raise the claim); *O'Sullivan*, 526 U.S. at 848.

Steele arguably presented Ground Five, fraud on the court: "in the withholding of data, and records of the trial," to the Ohio Supreme Court, which denied jurisdiction of his appeal. But in his brief in support of jurisdiction, Steele complained exclusively of the state's alleged withholding of his trial transcripts and challenged the trial court's jurisdiction and accused the state of a conspiracy (Doc. 11-1, pp. 285-297); he said nothing about "the actual DNA profile"

---

[6] Steele's Ground Two, actual innocence, is not based on evidence outside the record or not known to him, as described in more detail, *infra*.

11

that he discusses for the first time in his Petition.[7] *See* Doc. 1, p. 10. Thus, Steele did not fairly present this claim to the state courts and it is procedurally defaulted. *See Williams*, 460 F.3d at 806 ("To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his or her claim."). Moreover, Steele did not present Ground Five to the Ohio Court of Appeals; thus, he also procedurally defaulted this claim because he failed to present it at each and every level of appeal. *See Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D.Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."); *State v. Moreland*, 552 N.E.2d 894, 899 (Ohio 1990) (failure to present a claim to a state court of appeals before presenting it to the Ohio Supreme Court constitutes waiver of the claim).

### B. Steele cannot show cause, prejudice, or a miscarriage of justice

To overcome the procedural bar Steele must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if his claims are not considered. *Coleman*, 501 U.S. at 750. In his Traverse, Steele appears to argue that he could not contest the state's method of DNA testing because he was denied the use of his trial transcripts. Even if a lack of trial transcripts could serve as cause for his procedural default, Steele does not describe what he did to obtain a transcript. His own evidence shows that the court reporter sent him a letter advising him that, to receive a transcript without payment, there must be a journal entry on the state court docket directing the court reporter to prepare one at the state's expense (Doc. 1, p. 63 (letter to Steele from court reporter, dated March 25, 2014)). The trial court's docket sheet contains no request from Steele regarding a journal entry directing the court reporter to provide him with a transcript. *See* Doc. 11-1, pp. 322-323 (trial court docket sheet from 2/6/2014-3/27/2015).

---

[7] The DNA profile was discussed at length during the trial. *See, e.g.*, Doc. 12-2, pp. 15, 23.

Steele does not allege prejudice; indeed, his arguments regarding the importance of DNA evidence (Doc. 16, pp. 19-20) only serves to bolster his conviction since the DNA evidence presented at trial established that the DNA profile was consistent with Steele's, that Steele could not be excluded as the source of DNA found on all four victims, and that the likelihood that an unrelated individual would have the same DNA profile is one in one quintillion, thirty-nine quadrillion. Doc. 12-1, pp. 25-26l; Doc. 12-2, p. 29; *Steele*, WL 6983321, at *1.

Nor does Steele show manifest injustice, i.e., that his is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (6th Cir. 1995). Nowhere in his Petition or Traverse does Steele claim to be actually innocent; he only states that he believes he may have been able to avoid conviction. *See also* Doc. 11-1, p. 289 (brief in support of jurisdiction to the Ohio Supreme Court: "Appellant has never professed to be An Innocent Man, But does profess to be NOT GUILTY of any of the crimes charged in the cases in the Lower Court."). He does not identify a constitutional error or new reliable evidence that was not presented at trial. He only complains of "non-disclosure of actual DNA findings and actual DNA data." Doc. 16, p. 18. DNA findings and data were produced at trial; indeed, Steele used Ohio Bureau of Criminal Investigation ("BCI") DNA lab reports to cross examine BCI DNA expert witnesses and proffered the lab reports into evidence. *See* Doc. 12-2, pp. 101-104, 106-108 (cross examination of David Niemeyer, BCI forensic scientist); pp. 7, 34-36, 40-42 (cross examination of Melissa Zielaskiewicz, BCI forensic scientist); Doc. 12-3, pp. 4,

13

25-32 (cross examination of Heather Bizub, BCI forensic scientist), 35, 50-52 (cross examination of Lindsey Nelsen Rausch, from the BCI forensic biology unit); Doc. 12-4, pp. 65-67 (trial court admitting Steele's copies of the BCI DNA lab reports as defense exhibits upon his proffer). He now wishes to obtain "access to the raw data and testing information compiled by BCI" because it "might reveal" or "lead to facts that would assist [him] in proving the essential elements of his actual innocence and *Brady* claims." Doc. 16, p. 8. Steele asserts that, "after going through the entire trial is [sic] convinced that none of the information on those test [sic] will show that he was involved in any of the Rapes alleged against him." Doc. 16, p. 8. These reasons are not sufficient to show that Steele is actually innocent and was convicted because of a constitutional violation when the result of the tests show that the chance that someone unrelated to Steele committed the crime is one in 1,039,000,000,000,000,000.

In sum, all Steele's grounds are procedurally defaulted and he does not show cause, prejudice, or manifest injustice to excuse his default.

### C. Additionally, all Steele's grounds are not cognizable, fail to state a claim, or fail on the merits

#### 1. Ground One is not cognizable

In Ground One, Steele argues that the jury determination was "steered" and that "the jury clearly lost its way." Doc. 1, p. 7. Respondent observes that the phrase "the jury clearly lost its way" appears to be a claim that his conviction was against the manifest weight of the evidence. Doc. 11, p. 15. Steele does not dispute Respondent's assumption in his Traverse; it appears as though Ground One, therefore, asserts a manifest weight of the evidence claim. *See State v. Martin*, 485 N.E.2d 717, 720 (Ohio Ct. App. 1983) (the test for manifest weight of the evidence is whether "the jury clearly lost its way.").

14

Federal habeas corpus relief is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 US 1, 5 (2010). A claim that a conviction is against the manifest weight of the evidence rests solely on state law and is not a cognizable claim in a federal habeas petition. *See Ross v. Pineda*, 2011 WL 1337102, at *3 (S.D.Ohio April 11, 2011) ("Whether a conviction is against the manifest weight of the evidence is purely a question of Ohio law," citing *State v. Thompkins*, 678 N.E.2d 541 (Ohio 1997)).

Because Steele's manifest weight of the evidence claim in Ground One rests only on state law, it is not cognizable on federal habeas review. *See id*.

### 2. Ground Two is not cognizable

In Ground Two, Steele asserts an actual innocence claim. "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007). Steele does not identify an independent constitutional violation that can serve as a vehicle for this claim in his Petition. He does complain, for the first time in his Traverse, that the state suppressed evidence in violation of the rule established in *Brady v. Maryland*, 373 U.S. 83 (1963). Doc. 16, p. 18.

This Court is not required to address a theory of relief asserted only in a traverse but not in the habeas petition. *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005). Moreover, Steele did not assert a claim alleging a *Brady* violation in the state courts. Nor could he assert the claim now. As explained *supra*, DNA data was presented at trial, known to Steele at the time of his trial, and, therefore, he can no longer raise this claim in state court and it is procedurally defaulted. *Williams*, 460 F.3d at 806.

15

To the extent that Steele is claiming a *Brady* violation with respect to his own DNA Profile (Doc. 16, p. 16), he does not cite legal authority that a state is required, under *Brady*, to turn over underlying test documents consistent with a non-exculpatory crime lab report that was produced for the defense. *See U.S. v. Johnson,* 2011 WL 4729966, at *4 (N.D.Ohio Oct. 7, 2011) (the government turned over a BCI forensic scientist's comparison of defendant's DNA with the sample and was not required to also produce eliminated profiles)(citing *Villasana v. Wilhoit*, 368 F.3d 976, 979 (8th Cir. 2004)); *see also Moore v. Illinois,* 408 U.S. 786, 795 (1972) ("We know of no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case."); *State v. Hall,* 2009 WL 237913, at *8, n. 3 (Oh. Ct. App. Aug. 3, 2009)(the state is not required to turn over "actual DNA findings" and "actual DNA data," as opposed to the BCI DNA report, and the failure to do so was not a *Brady* violation). Moreover, the BCI expert offered to provide Steele the underlying data; Steele declined the offer. Doc. 12-2, p. 26.[8]

Moreover, Steele does not describe how his DNA profile would show that he was actually innocent. He only speculates that state actors conspired against him (Doc. 1, p. 8) but he generally endorses the reliability of DNA testing.[9] Doc. 16, pp. 17, 19-20. That he now wishes to obtain "access to the raw data and testing information compiled by BCI" because it "might

---

[8] During Steele's cross examination of BCI expert Zielaskiewicz, Zielaskiewicz explained how DNA testing is performed. She explained that fifteen "locations," i.e., a particular portion of the DNA strand, are tested. Doc. 12-2, p. 15. The BCI does not review each of the fifteen locations separately because DNA profiles may "share" at three or four locations. *Id.* at 38-39. Instead, the BCI reviews the results as a whole, i.e., all fifteen locations of the DNA strand, which indicates whether there is a match or not. *Id.* at 38-39. Accordingly, the BCI report does not include a chart of the DNA profiles that were detected at each of the fifteen locations tested. *Id.*, pp. 35, 37. Rather, it identifies the profile found at all fifteen locations in the DNA strands that were tested. *Id.* Steele's sample shared at all fifteen locations. *Id.* During his cross examination, Steele stated that he "would need to see the statistics of those [15 DNA locations], those same 15 numbers and the comparison between the two." *Id.* at 36. Zielaskiewicz responded, "If you request it, we can—I could generate a report for you and show you the numbers that were at each one of those locations." *Id.* Steele responded, "It's a little late for that" and had no more questions. *Id.*

[9] The publications and cases Steele cites discussing the reliability of DNA testing predate his trial and, as noted, Steele rigorously cross examined the BCI forensic experts about their methods and their findings using BCI DNA evidence that was provided to him by the state.

16

reveal" or "lead to facts that would assist [him] in proving the essential elements of his actual innocence and *Brady* claims" does not sufficiently describe a constitutional violation that can serve as the vehicle for his actual innocence claim. See *Johnson*, 2011 WL 4729966, at *4.

Thus, Steele's actual innocence claim, even if the Court were to entertain it, is not cognizable on federal habeas review.

### 3. Ground Three fails to state a claim

In Ground Three, Steele states that his sentence is contrary to "law and constitution" because it "does not constitutionally meet the facts." Doc. 1, p. 7. He offers no other explanation. His description of Ground Three does not comport with Rule 2 of the Rules Governing Section 2254, which provides, in relevant part,

(c) Form. The petition must:

(1) specify all the grounds for relief available to the petitioner;

(2) state the facts supporting each ground[.]

*Id*. See also *Mayle v. Felix*, 545 U.S. 644, (2005) ("Rule 2 of the Rules Governing Habeas Corpus Cases requires a more detailed statement" than the notice pleading requirements of Fed. R. Civ. Pro. 8(a)); *Adams v. Armontrout*, 897 F.2d 332, 333 (8th Cir. 1990) ("We join the numerous federal courts which have repeatedly expressed their unwillingness to sift through voluminous documents filed by habeas corpus petitioners in order to divine the grounds or facts which allegedly warrant relief."); *Mills v. Larose*, 2015 WL 687829, at *11 (N.D. Ohio Feb. 18, 2015) (federal habeas petition is subject to dismissal when it "fail[s] to provide factual context in support of legal conclusions[,]" citing *Smith v. Haskins*, 421 F.2d 1297, 1298 (6th Cir. 1970)).

Because Steele fails to provide factual context in support of his summary legal conclusion, *see id*., Ground Three fails to comport with Rule 2(c) of the Rules Governing Section 2254 and should be dismissed. Moreover, to the extent Steele argues a violation of state

17

sentencing laws, such a claim is a non-cognizable. *See Pulley v. Harris*, 465 U.S. 37, 41 (1984) (perceived state law sentencing error not cognizable on federal habeas review).

### 4. Ground Four fails on the merits

In Ground Four, Steele argues that the evidence was insufficient to convict him. Doc. 1, p. 7. He makes no argument as to why the jury's verdict was based on insufficient evidence. The jury was presented with incontrovertible DNA evidence and testimony of three victims describing similar attacks (all walking alone down a street, approached by a stranger, threatened, moved to a different location and raped) within the same time frame (March 1993—March 1994) and location (east side of Cleveland, Ohio). It cannot be said that the jury's verdict was based on insufficient evidence. Ground Four fails on the merits.

### 5. Ground Five fails on the merits

In Ground Five, Steele argues that DNA evidence was not provided to him. Doc. 1, p. 12. This argument is belied by the record, which shows that Steele received BCI documents that he presented as evidence at trial and used to cross-examine BCI witnesses. *See, e.g.*, Doc. 12-2, pp. 7, 34-36, 40-42, 101-104, 106-108; Doc. 12-3, pp. 4, 25-32, 35, 50-52; Doc. 12-4, pp. 65-67. And, as discussed, *supra*, he was not entitled to "raw DNA data" and he did not request it despite the BCI expert offering it. His assertion that he was denied trial transcripts is also belied by the record because it appears as though he did not follow proper procedure in requesting them, despite the court reporter explaining exactly what he needed to do to obtain them and his obvious proficiency in representing himself at trial and on appeal. Ground Five fails on the merits.

## IV. Conclusion and Recommendation

For the reasons stated above, the undersigned recommends that Petitioner's habeas Petition be **DISMISSED** because all Steele's grounds are procedurally defaulted. Additionally, all Steele's grounds are not cognizable, fail to state a claim, or fail on the merits.

Dated: February 25, 2016

Kathleen B. Burke
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).