# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES M. STEELE, | ) | CASE NO. 1:15-cv-1374 |
| | ) | |
| PETITIONER, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| CHARLOTTE[1] JENKINS, Warden, | ) | |
| | ) | |
| RESPONDENT. | ) | |

Before the Court is the Report and Recommendation ("R&R") of Magistrate Judge Kathleen B. Burke recommending the denial of this *pro se* petition for writ of habeas corpus filed under 28 U.S.C. § 2254. (Doc. No. 17; *see* Doc. No. 1 (Petition ["Pet."]).) Petitioner Charles Steele ("petitioner" or "Steele") has filed objections. (Doc. No. 18.) Respondent Charlotte Jenkins ("respondent") has filed neither objections nor any response to petitioner's objections. For the reasons discussed below, the objections—to the extent they are properly filed—are overruled, the R&R is accepted, and the petition for writ of habeas corpus is denied and dismissed.

I. **BACKGROUND**

In 2013, while serving time in a state penitentiary for multiple convictions of rape with a firearm specification, petitioner was indicted by the grand jury on one count of rape, in violation of Ohio Rev. Code § 2907.02(A)(2); and one count of kidnapping, in violation of Ohio Revised

---

[1] Respondent's first name is misspelled in the petition. (Pet. at 1.)

Code § 2905.01(A)(4). (Doc. No. 11-1 (Indictment, dated Mar. 5, 1993) at 121[2].) The newly indicted crimes took place in 1993, and the delay in bringing charges was attributed to a backlog of untested DNA rape kits. On-going testing by the State of Ohio on other previously untested DNA rape kits resulted in three additional hits on petitioner for crimes committed between 1993 and 1994, eventually leading to a superseding indictment charging petitioner with four counts of rape and four counts of kidnapping, all with firearm specifications. (Doc. No. 11 (Return of Writ) at 99-100, record cites omitted.)

By election, and with the assistance of stand-by counsel, petitioner proceeded *pro se* to trial on the superseding indictment, and the jury returned guilty verdicts on all charges. After a direct appeal and a remand for re-sentencing, petitioner was ultimately sentenced to a term of imprisonment of 72 years. (Doc. No. 11-1 (Journal Entry of Judgment) at 428.) The R&R thoroughly sets out the state procedural history of the case following re-sentencing, to which petitioner takes no exception, and the Court adopts the same without repeating it herein. (R&R at 1423-27.)

In the present habeas application that followed the proceedings in state court, petitioner raised five grounds for relief:

> GROUND ONE: **Deprived the right to a reliable jury.** The determination of the jury was steered, and not beyond reasonable doubt. The jury clearly lost its way.
>
> GROUND TWO: **Actual [sic] innocent of the indicted charge[s].** The facts show a clear claim of innocence of the indicted charge[s].
>
> GROUND THREE: **Sentence is contrary to law and [C]onstitution.** The sentence does not constitutionally meet the facts.

---

[2] All page number references are to the page identification number generated by the Court's electronic docketing system.

> GROUND FOUR: **Insufficient evidence which caused [a] miscarriage of justice.** The evidence is insufficient to render guilty, when in all actuality renders a favorable showing of innocence of the indicted charge.
>
> GROUND FIVE: [F]raud upon the court in the withholding of data, and records of the trial.[3]

(Pet. at 7, 12, bolding in original, headings added.)

Contemporaneous with the filing of this action, petitioner filed a motion for discovery (Doc. No. 2) and a motion for expansion of the record.[4] (Doc. No. 3.) The motion for discovery sought the transcripts from the state trial court (Doc. No. 2 at 67), and the motion to expand the record sought to include "the documents that were never presented at his trial namely the BCI DNA Profile which the State claims is the basis of the charges that couples Petitioner to the 4 Rapes that were alleged to have been committed by Mr. Steele."[5] (Doc. No. 3 at 72, capitalization and number in original.) In an order dated October 15, 2015, the magistrate judge denied the motion for discovery as moot because respondent agreed to provide petitioner with the trial transcripts. (Doc. No. 15 at 1394; *see* Doc. No. 12 (Notice of Filing Transcripts).) The magistrate judge also denied without prejudice the motion to expand the record to include evidence not available at trial because it was "not pertinent to the question of whether [petitioner's] grounds [for habeas relief were] procedurally defaulted[.]"[6] (*Id*. at 1395.)

---

[3] As the magistrate judge observed, the fifth ground for relief was not clearly set forth in the petition, but, affording a liberal interpretation to this *pro se* pleading, it appears that petitioner intended to advance this argument as a separate ground for relief.

[4] This action was originally filed in the United States District Court for the Southern District of Ohio. It was transferred to this Court on July 9, 2015. (Doc. No. 4 (Order).)

[5] Based upon subsequent filings, it appears that petitioner was not seeking to expand the record to include the DNA profile evidence, which clearly was offered at trial, but was requesting that the DNA raw data be included in the record. (*See, e.g*., Obj. at 1443-44.)

[6] On September 28, 2015, petitioner filed a second "request" to receive the trial transcripts. (Doc. No. 13.) This motion was also denied as moot. (*See* Doc. No. 15 at 1394.)

In her R&R, the magistrate judge recommends that the Court dismiss all five grounds as procedurally defaulted, finding that petitioner never presented any of his grounds for relief to the state courts. (R&R at 1432.) With respect to the final ground—fraud upon the court—the magistrate judge found that petitioner had arguably presented the alleged withholding of trial transcripts to the state courts, but had not litigated the alleged denial of DNA evidence he discussed for the first time in his federal habeas petition. (*Id.* at 1432-33.) Further, the magistrate judge concluded that petitioner was unable to show cause, prejudice, or a miscarriage of justice sufficient to overcome the procedural bar. (*Id.* at 1433-35.) Alternatively, the R&R recommended dismissal of the asserted grounds because they were not cognizable, failed to state a claim, or failed on the merits. (*Id.* at 1435-39.)

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1), "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926, at *1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to de novo review by the district court in light of specific objections filed by any party.") (citations omitted). "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004); *see also* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."); L.R. 72.3(b) ("any objecting party shall file

"written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections"). After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

When undertaking its de novo review of any objections to the R&R, this Court must be additionally mindful of the standard of review applicable in the context of habeas corpus. "Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214, a federal court may grant habeas relief only when a state court's decision on the merits was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by' decisions from [the Supreme] Court, or was 'based on an unreasonable determination of the facts.' 28 U.S.C. § 2254(d)." *Woods v. Donald*, --U.S.--, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) (per curiam). This standard is "intentionally difficult to meet." *Id*. (internal quotation marks and citations omitted). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id*. (quoting *Harrington v. Richter*, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).

"[F]ederal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id*. "Federal habeas review thus exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington*, 102-03

(further quotation marks and citation omitted).

### III. PETITIONER'S OBJECTIONS

In his "objections," petitioner offers the following observation:

> [T]he Northern District of Ohio is still in the business of the Protection Racket. The Report and Recommendation clearly pays no attention to [anything] that Petitioner has stated in his Complaint and Traverse and Request for A Petition for Habeas Corpus Relief. There are errors in the Report that simply take the Respondent's side of events and take no he[ed] to [anything] that Petitioner has claimed in his Petition.

(Obj. at 1441, capitalization in original, spacing and line breaks omitted.)

While he alludes to "errors" in the R&R, petitioner fails to identify those errors. Specifically, petitioner fails to challenge the magistrate judge's proposed findings that his claims are procedurally defaulted, or that each claim is non-cognizable, fails to state a claim, or is meritless. Instead, he simply repeats the arguments advanced in his petition and traverse, and urges this Court to reach a conclusion contrary to that advanced by the magistrate judge. Even affording petitioner's filing a liberal interpretation that is appropriate for *pro se* filings, *see Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972), the vast majority of the document cannot be interpreted as raising legitimate objections to the R&R. *See Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006) ("[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error are too general.") (quotation marks and citation omitted), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 166 L. Ed. 2d 799 (2007).

The only argument that even touches upon the magistrate judge's threshold finding that petitioner's claims are procedurally defaulted is petitioner's repeated insistence that he is innocent. (Obj. at 1442 ["The only issue that is of relevance in this action is that Petitioner[] is

absolutely innocent of the Four Rapes that he was charged with in the Court of Common Pleas of Cuyahoga County."]; *id.* ["the bottom line is that I AM AN INNOCENT MAN"], capitalization in original.) While petitioner did attempt to set forth a stand-alone claim of actual innocence, the Court will generously construe these remarks as also attempting to overcome his procedural default.

Generally, a federal court will not review a procedurally defaulted claim on habeas corpus review "[o]ut of respect for finality, comity, and the orderly administration of justice[.]" *Dretke v. Haley*, 541 U.S. 386, 388, 124 S. Ct. 1847, 158 L. Ed. 2d 659 (2004). "This is a corollary to the rule that 'federal courts will not disturb state court judgments based on adequate and independent state law procedural grounds.'" *Nelloms v. Jackson*, 129 F. Appx. 933, 937 (6th Cir. 2005) (quoting *Dretke*, 541 U.S. at 392)). "The only exceptions to this rule are when a state prisoner can demonstrate cause for the procedural default and prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to review the constitutional claim will result in a fundamental miscarriage of justice." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 749-50, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)); *see Bousley v. United States*, 523 U.S. 614, 622, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998) (citations omitted).

A prisoner can establish a fundamental miscarriage of justice by showing that "'in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.'" *Bousley*, 523 U.S. at 623 (quoting *Schlup v. Delo*, 513 U.S. 298, 327-28, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995) (further quotation marks and citation omitted)); *see Souter v. Jones*, 395 F.3d 577, 589-90 (6th Cir. 2005) (a prisoner must "'present[] evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also

7

satisfied that the trial was free of nonharmless constitutional error'") (quoting *Schlup*, 513 U.S. at 316). In other words, he must demonstrate that "'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *See Schlup*, 513 U.S. at 324 (quoting *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986) (further citation omitted)). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324.

At trial, the state offered DNA evidence that established that the DNA profiles present in the swabs collected from the four rape victims were consist with petitioner's profile, and that the likelihood that an unrelated individual would have the same DNA profile was 1 in 1,039,000,000,000,000,000. These expert witnesses also testified that, based on the testing, petitioner could not be ruled out as the source of the semen from which the DNA profile was taken. (Doc. No. 12-2 (Trial Transcript, Volume 2) at 732, 794-95, 801-02, 803; Doc. No. 12-3 (Trial Transcript, Volume 3) at 833-35.) Petitioner does not challenge, and, in fact, endorses the methodology used to test the samples. (Obj. at 1445.) Instead, he speculates, without any support, that the raw DNA data supporting these tests would "show that he was not a participant in any of the crimes he was charged with." (Obj. at 1443.) He complains that the magistrate judge erred in denying his motion to expand the record to include this evidence on habeas review. (*Id.*)

The Court finds no error. Putting aside petitioner's conclusory allegations that the raw DNA evidence was exculpatory, petitioner was seeking evidence on habeas review that he was

8

aware of at the time of trial and was available to him prior to the trial.[7] Accordingly, it cannot serve, on habeas review, as new reliable evidence that could have been utilized to demonstrate a fundamental miscarriage of justice sufficient to permit him to overcome the procedural default of his various grounds for relief. *See Duffy v. Collins*, No. 99-4251, 230 F.3d 1358 (6th Cir. Sept. 25, 2000) (Table), 2000 WL 1477226, at *2 (petitioner improperly "relies on allegedly exculpatory DNA evidence which was available to him prior to trial" to attempt to establish the potential for a miscarriage of justice).

Petitioner's objections also raise a new argument that did not appear in his application and was never presented to the magistrate judge. While he previously argued that various government actors perpetrated a fraud upon the court by bringing charges against an innocent man, he now posits that the prosecutor knowingly permitted the DNA experts and other government witnesses to offer false testimony at trial. (Obj. at 1454.) "It is well established that a party may not raise an argument, advance a theory, or marshal evidence before a District Judge that was not fairly presented to the magistrate judge." *Marr v. Foy*, No. 1:07-cv-908, 2010 WL 3061297, at *4 (W.D. Mich. Aug. 3, 2010) (quotation marks, citations, and bolding omitted). "The Magistrates Act was not intended 'to give litigants an opportunity to run one version of their case past the magistrate, then another past the district court.'" *Jones-Bey v. Caruso*, No. 1:07-cv-392, 2009 WL 3644801, at *1 (W.D. Mich. Oct. 30, 2009) (quoting *Greenhow v. United States*, 863 F.2d 633, 638-39 (9th Cir. 1988), *rev'd on other grounds by United States v. Hardesty*, 977 F.2d 1347 (9th Cir. 1992) (en banc)). As such, this argument is not entitled to de

---

[7] Petitioner concedes that he was provided with DNA discovery materials prior trial, though he complains that he did not have access to the materials until the Friday before trial. (Obj. at 1454.) There is no evidence that defendant sought a continuance of the trial date or otherwise expressed to the trial court that he required more time in order to effectively utilize or attack the DNA evidence at trial.

novo review by this Court.

Even if the Court were to consider this new argument, it would not establish petitioner's entitlement to relief from his state court judgment. "To establish that the prosecution presented false testimony, [petitioner] must show that (1) [the] statements were false, (2) that they were material, and (3) that the prosecution knew they were false." *Amos v. Renico*, 683 F.3d 720, 728 (6th Cir. 2012) (citing *Brooks v. Tenn.*, 626 F.3d 878, 894-95 (6th Cir. 2010)); *see Smith v. Metrish*, 436 F. App'x 554, 566 (6th Cir. 2011) (quotation marks and citation omitted). "In order to satisfy the first two prongs of this test, [the petitioner] need not demonstrate that the prosecution presented false testimony that at the time of the presentation he knew to be false. Rather, it is sufficient that [the petitioner] show that the prosecutor used 'testimony, whether elicited or left uncorrected, that the prosecution kn[e]w [] or should [have known] is false.'" *Smith*, 436 F. Appx. at 566 (quoting *Foley v. Parker*, 488 F.3d 377, 392 (6th Cir. 2007)); *see Abdus-Samad v. Bell*, 420 F.3d 614, 626 (6th Cir. 2005) ("The statement must be indisputably false rather than merely misleading.") (quotation marks and citations omitted). To satisfy the final prong, the petitioner must show that there exists "any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Rosencrantz v. Lafler*, 568 F.3d 577, 584 (6th Cir. 2009) (quotation marks and citations omitted); *see Brooks*, 626 F.3d at 895 (quoting *Giglio v. United States*, 405 U.S. 150, 154, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972) (further citation omitted)).

It is not entirely clear from petitioner's objections what trial testimony he believes to be false. He seems to focus on the fact that one of the victims testified that she was raped vaginally, while the test results purportedly showed petitioner's semen in the victim's rectum. (Obj. at

1446.)[8] This showing falls well short of establishing any of the prongs of a false testimony claim. At best, petitioner has highlighted what he believes is an inconsistency between the testimonies of two government witnesses. "While a prosecutor may not knowingly use perjured testimony, a prosecutor is not required to ensure that prosecution witness' testimony be free from all confusion, inconsistency, and uncertainty. Additionally, [p]etitioner has failed to offer any substantive argument that would call into doubt the validity of the DNA evidence offered at trial." *Brown v. Romanowski*, No. 2:06-cv-14341, 2010 WL 3905889, at *6 (E.D. Mich. Sept. 30, 2010). Because petitioner has failed to demonstrate that knowingly false and material testimony was offered at trial, his false testimony claim—if properly presented—would fail.

## IV. CONCLUSION

For the reasons discussed above, petitioner's objections to the R&R are all overruled and the R&R is accepted. The petition for writ of habeas corpus is denied and the case is dismissed.

---

[8] Petitioner also appears to complain that one or more of the DNA experts failed to testify that this victim reported that she had engaged in voluntary sexual intercourse with a different partner three days before the test sample was collected and that no other profiles were considered. (Obj. at 1446-47.) Despite having access to the DNA evidence prior to trial, and despite the fact that a nurse working the emergency room the night of the attack on this witness testified that the victim advised her that her last voluntary sexual intercourse was March 3, 1994 (Doc. No. 12-3 (Trial Transcript, Volume 3) at 1009), petitioner did not attempt to cross-examined the DNA witnesses with regard to this matter. More to the point, petitioner fails to identify any DNA testimony that was false or misleading, and fails to demonstrate how this purported omission was material. Petitioner's *Brady* claim—which was raised for the first time in his traverse and involved the same evidence—would also fail. Petitioner was well aware that DNA evidence was presented at trial, and he concedes that he was given access to it prior to trial. *See Brooks*, 626 F.3d at 896 (rejecting *Brady* claim where both prosecution and defense had access to the evidence) (citing *Norris v. Schotten*, 146 F.3d 314, 334-35 (6th Cir. 1998) (concluding that there is no *Brady* violation where the defense had in its possession evidence that demonstrated the witness's inconsistent statements, and remarking that "there would be no need for a jury if trials did not contain such inconsistencies")). Petitioner has offered nothing to suggest that the prosecution withheld the information regarding this victim's prior voluntary sexual intercourse, of which the prosecutor actually elicited testimony from another witness.

Further, the Court certifies that an appeal from this decision could not be taken in good faith and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

Dated: October 3, 2017

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**